IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

Mitchell Graham,

    *Plaintiff*

    *v.*                                        Docket No.: 2:10-cv-01101

Port Authority of Allegheny County; Port     Honorable David S. Cercone
Authority of Allegheny County Transit Police;     United States District Court Judge
R. Meder; Michael Tima; S. Hudzinski; and,
Stephen McCauley.

    *Defendants.*

PLAINTIFF'S PRETRIAL STATEMENT

AND NOW, comes Mitchell Deceased, the Plaintiff herein, by and through his counsel; Monte J. Rabner, Esquire, Rabner Law Offices; and, respectfully sets forth the following Pretrial Statement:

NARRATIVE

This cause of action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this court under the provisions of Title 28 of the United States Code, Sections 1331, 1334 and 1367 (a). Allegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures applicable to the States and individual acting in their official and individual capacity by the Fourteenth Amendment of the United States Constitution. It is also submitted that the pendant jurisdiction of this Court is invoked over all state court claims in view of the common nucleus of operative facts as to all claims.

On August 23, 2008 at approximately 10:36 p.m., Officers of the Transit Police were dispatched to the Port Authority transit facility located at Station Square on Carson Street on the Southside of the City of Pittsburgh.  The caused for the dispatch of the Officers was based upon a report that an individual was walking on the Panhandle Bridge located between the First Avenue Station and the Station Square Station. Such bridge did not provide for pedestrian access.

Officers Tima and Meder responded to dispatch for Officers at the Station Square Station with Officer Tima being first on the scene. Neither Officer observed Mitchell Graham engage in any conduct which was disruptive of Port Authority Transit operation nor did they observe him trespassing upon any property or any portion of the facilities owned and operated by the Port Authority.

Officer Tima was given a description of the alleged trespasser by dispatch that he was a white male with a green t-shirt and blue jeans. It was further indicated that he was alleged to have left the Station Square platform area and was on Carson Street, which is immediately adjacent to the Station.

Upon his arrival, Officer Tima exited his vehicle and was said to have observed Mitchell Graham cross over Carson street towards the Station Square Station area. It was alleged that Officer Tima gave several verbal commands to Mitchell Graham to stop but that he failed to respond to the same. However, there was no indication that Mitchell Graham had heard the alleged commands to stop nor was he characterized as attempting to flee from the Officer or as representing a danger to himself or others.

Officer Meder arrived on the scene to assist in the matter when he was said to have

2

observed Mitchell Graham moving away from Officer Tima. At such time, Officer Meder began in pursuit of Mitchell Graham and was alleged to have advised Mitchell Graham that he would be tased if he did not stop. Again there was no indication that Mitchell Graham heard the commands or that he was fleeing form Officer Meder. Furthermore, there was no indication that he represented a danger to himself or others.. In fact, he was walking along as public sidewalk heading towards a bus stop located on the sidewalk adjacent to the Station Square Station. Officer Meder then tased Mitchell Graham when he failed to stop causing him to fall face forward striking the sidewalk.  At the time Officer Meder made use of his taser, Mitchell Graham did not posed an immediate threat to the safety of the officers or others. At the time he was tased, the offenses with which Mitchell Graham could have been conceivably charged constituted summary violations of disorderly conduct and/or defiant trespass.

    When he was tased, Mitchell Graham experienced both paralysis and intense pain throughout his body; and, the lost muscular control and fell, uncontrolled, face first into the pavement. This fall shattered multiple upper and lower teeth and caused facial abrasions, swelling, factures and lacerations.  Additionally, one or more barbed probes lodged in his flesh, required hospitalization so that a doctor could remove the probe(s) with a scalpel. As a result of being tased, Mitchell Graham was required to be hospitalized, suffered multiple facial fractures; required surgical intervention; suffered extensive dental injuries; and, has been required to undergo and will have to undergo extensive surgical and/or dental procedures in the future.

    Force used by a police officer can be unreasonable even without physical blows or injuries. The presence of non-minor physical injuries like those suffered by Mitchell Graham, however, is certainly relevant in evaluating the degree of the Fourth Amendment intrusion, which has occurred

The use of tasers is said to constitute an intermediate or medium, though not insignificant, quantum of force. A taser fires two (2) small dart-like electrodes barbs into an individual which stay connected to the main unit by conductive wires. The taser is an electroshock weapon that uses approximately 50,000 volts of electrical current to disrupt voluntary control of muscles thereby in the immediate immobilization of the individual into who they are fired.

Tasers and stun guns fall into the category of non-lethal force. Non-lethal, however, is not synonymous with non-excessive as all force--lethal and non-lethal--must be justified by the need for the specific level of force employed. Less than deadly force, like deadly force, may not be used without sufficient reason. The nature of the specific force employed must be evaluated in a specific factual situation where the force is employed

A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. Rather, the objective facts must indicate that the suspect poses an immediate threat to the officer or a member of the public. While the commission of a misdemeanor or summary offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable where the suspect was nonviolent and posed no or an insubstantial threat to the safety of the officers or others.

Based upon the totality of the circumstances, it is submitted that the used of the taser on Mitchell Graham was not appropriate or reasonable in nature and constituted an excessive use of force against him in violation of the rights and immunities guaranteed to Mitchell Graham by the Fourteenth and Fourth Amendments of the United States Constitution.

The actions of the Officers were not appropriate or reasonable in nature and constituted

an excessive use of force against Mitchell Graham in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution.

It is alleged that the Port Authority of Allegheny County failed to have established and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction of any Transit Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated; when individuals are to be taken into custody and or arrested; and, when; under what circumstances; and in what manner on officer is permitted to use force against an individual including when the use of a Taser. Additionally, it failed to enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Transit Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

The errors, omissions and failures of the Port Authority of Allegheny County were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Mitchell Graham in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

Defendants McCauley and Hudzinsk, as officers and supervisors of the Port Authority of Allegheny County Transit Police, were charged to insure that policies and procedures concerning the use of force were properly enforced and to properly train the Transit Police Officers under their command and supervision with the enforcement of the laws of the Commonwealth of Pennsylvania, in a fair, just and equitable manner consistent with the rights afforded all individuals by the Constitutions of the United States of America and the

Commonwealth of Pennsylvania.  McCauley and Hudzinski were also charged with the training and supervision of officers under their command including but not limited to when; under what circumstances; and in what manner on officer is permitted to use force against an individual including when the use of a Taser.

The errors, omissions and failures of  McCauley and Hudzinski were the direct or proximate cause that allowed the  inappropriate or unreasonable use of excessive force against Mitchell Graham in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

## DAMAGES

As a direct and proximate result of the acts, errors and omissions of the Defendants, Mitchell Graham sustained shock and injury to his nerves and nervous system; he shattered multiple upper and lower teeth and suffered facial abrasions, swelling, factures and lacerations; he underwent the performance of required emergency surgery facial and dental; he has been subjected to and may hereafter be subject to great pain, suffering and inconvenience; he was required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for his injuries; he may have sustained an aggravation of pre-existing injuries or conditions; he has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression and nervousness. He has suffered scarring and disfigurement. He has incurred and may hereafter incur expenditures for medical care, dental care, nursing, drugs, appliances and kindred expenditures. He has suffered and sustained past, present and future loss of earnings; damage to future earning capacity; past, present and future; medical expenses in the past, present and future;

counsel fess; and, such other damages as allowable by law.

## WITNESSES-LIABILITY

1. All parties to this action.

2. Amanda Petrelli

3. Amanda Rae Kubit

4. Sue Swiech,

5. Teresa Reynolds

6. Tim Maloney, Plaintiff does not have his current address or telephone number.

7. Any individual or entity previously identified in any pleading or discovery filed or obtained by either party or identified by either party in their pretrial statement.

## WITNESSES-DAMAGES

1. All parties to this action.

2. Custodian of the Records
   UPMC MERCY Hospital
   1400 Locust Street
   Pittsburgh, PA 15219

3. Mark W. Ochs, DMD, MD
   Custodian of the Records
   School of Dental Medicine
   Department of Oral & Maxillofacial Surgery
   3501 Terrence Street, Pittsburgh, PA 15261.

4. William L. Chung, DDS, MD,
   Custodian of the Records
   University Dental Health Services Inc.
   3459 Fifth Avenue
   Pittsburgh, PA 15213

5. Custodian of the Records
   UPMC St. Margaret

6. Custodian of the Records
   UPMC Presbyterian

7. Custodian of the Records
   Gateway Health Plan

8. Custodian of the Records
   Pennsylvania Department of Welfare-Medicaid

9. Custodian of the Records
   University Dental Health Services

10. Any individual, provider or entity previously identified in any pleading or discovery filed or obtained by either party or identified by either party in their pretrial statement.

## USE OF DEPOSITIONS AND VIDEO TAPES

At the present time, the Plaintiff anticipates that all testimony will be presented through the witnesses to be called. Plaintiff reserves the right to make use of depositions or videos where appropriate. It is anticipated that a video obtained from the Station Square Station will be introduced.

## ISSUES TO BE ADDRESSED AT PRETRIAL CONFERENCE

Plaintiff anticipates that the parties will address and resolve the use of stipulations; any pretrial motions; any remaining discovery issues; witnesses; and, exhibits to be proffered at the time of trial.

## LIST OF EXHIBITS

1. Any exhibit identified in any pleading, deposition or other discovery filed or obtained by any party to this action.

2. Any exhibit identified in the Defendants' Pretrial Statement.

3. Plaintiff's medical records.

4. Plaintiff's medical costs and invoices.

5. Any exhibit attached to any deposition in this matter;

6. Any document produced during discovery in this matter.

7. Any written or oral statement given or which may be given by any person regarding the facts and circumstances of this matter.

8. Any memorandums, records, correspondence, emails, etc received from any party during the course of discovery in this matter.

## EXPERT TESTIMONY

Plaintiff intends to call Roy R. Bedard, RRB Systems International as an expert in this matter on the use of force and the justification; police procedures, training and supervision. Report is being completed and will be submitted upon the receipt of the same.

## MEDICAL TESTIMONY

Plaintiff anticipates the medical testimony in this matter shall be presented primarily by Mark W. Ochs, DMD, MD and William L. Chung, DDS, MD. Narrative reports have been requested and will be submitted.

## RESERVATION

Plaintiff reserves the right to supplement this Pretrial Statement up to and including the time of trial.

Respectfully submitted,

/s/ Monte J. Rabner
Monte J. Rabner, Esquire
PA ID No. 68251

Rabner Law Offices, P.C.
800 Law & Finance Building
Pittsburgh, PA 15219

(412) 765-2500
(412) 765-3900 Fax

Counsel for Plaintiff